UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-60135-UU

NICOLE HERRERA, et al.,

    Plaintiffs,
v.

SAFECO INS. CO. OF ILLINOIS,

    Defendant.
_____/

## ORDER DENYING SUMMARY JUDGMENT

THIS CAUSE is before the Court on Defendant Safeco's Motion for Summary Judgment (D.E. 48) (the "Motion").

THE COURT has considered the Motion, pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth herein, the Motion is DENIED.

### BACKGROUND

The material facts viewed in the light most favorable to Plaintiffs as the non-moving parties are as follows:

Defendant Safeco Insurance Company of Illinois ("Safeco") issued an automobile insurance policy to Plaintiff Jorge Herrera ("Jorge") and his wife, Maria Herrera. D.E. 47 ¶ 1. Their daughter, Plaintiff Nicole Herrera ("Nicole"), was an insured driver under the policy. *Id.* The policy provided in relevant part, $100,000 per person and $300,000 per accident in bodily injury liability coverage. *Id.*

In the early morning hours of October 3, 2012, Nicole was driving her vehicle northbound in the southbound lanes of Interstate-95 in the Miami area and collided with a vehicle driven by Azayna Hayes ("Hayes"). *Id.* ¶ 2. Amanda Fader ("Fader") was a passenger in Hayes' car. *Id.*

1

As a result of the collision, Hayes, Fader and Nicole were seriously injured. *Id.* ¶ 3. Most relevant to this bad faith case, Fader's injuries included a fractured jaw requiring her mouth to be wired shut, a vertebral facture requiring a fusion of her L3 vertebral body, colon damage requiring intestinal surgery, numerous lacerations to her face, arm, and lips, and burns to her forearms. D.E. 61 ¶ 45.

A police traffic crash report was completed on October 3, 2012, but Safeco did not obtain the police report until November 1, 2012. *Id.* ¶ 49; D.E. 47 ¶ 20. The report described Fader's injuries as "incapacitating" and placed liability completely on Nicole. D.E. 61 ¶ 49. Also, online news reports were published the day of the crash, reporting that Hayes, Fader and Nicole were seriously injured, and that Nicole was responsible for the accident, but may not have been seen by Safeco's adjuster assigned to the claim, Charles Coen ("Coen"). *Id.* ¶¶ 50–51.

Safeco learned of the accident on October 4, 2012 but the source of the information is not clear. D.E. 47 ¶ 3. In any event, on that day, Coen spoke with Nicole's parents and also spoke with Hayes' parents. *Id.* From those conversations, Coen learned basic facts about the accident, that all three individuals were hospitalized, and that Hayes and Nicole had suffered injuries. *Id.*

Over the following few days, an attorney, Evan Ostfeld ("Attorney Ostfeld"), contacted Safeco to advise of his representation of Hayes. *Id.* ¶ 4. Additionally, Coen made several calls to the Herrera family attorney and to Maria Herrera, and also called Hayes and her father, to obtain information about the accident and the extent of the injuries. *Id.*

On October 10, 2012, Coen wrote his first summary of the claim. *Id.* ¶ 6. In the summary, he noted that he needed Nicole's statement, accident scene photos, and the police report. *Id.* He noted that Nicole was driving the wrong way and collided head on with the other vehicle and that she appeared to be at fault for the accident. *Id.* He also noted that both Nicole and Hayes suffered

one or more fractures requiring surgery. *Id.* Given Hayes' injuries, he recommended setting the reserve on her claim at the policy limit of $100,000. *Id.* For Fader, his note indicates that she suffered only soft tissue injuries and had undergone emergency room treatment. *Id.* ¶ 7. Coen recommended a reserve of $33,500 for the Fader claim. *Id.*

After October 23, 2012, Coen had numerous communications with Hayes' attorney, the Herrera's family attorney, and the Herreras mainly concerning the settlement of Hayes' claim. D.E. 47 ¶¶ 13–14. Additionally, Coen had conversations with Progressive, Hayes' insurer, and interviewed witnesses to the accident. *Id.* ¶ 15. Notably, on November 7, 2012, Coen sent a letter to Hayes' attorney tendering the policy limits along with a proposed release. *Id.* ¶ 21. However, Hayes' attorney declined to consummate the settlement until he received the insured's financial affidavit, an asset check and the insured's employment information. *Id.* ¶ 24. Those conditions and others eventually were satisfied, and the Hayes settlement was completed in 2013. *Id.* ¶ 43.

On October 15, 2012, while still hospitalized, Fader retained the law firm of Goldberg & Rosen. D.E. 61 ¶ 9. Shortly thereafter, Zahyly Chavez, a Goldberg & Rosen paralegal, spoke with a Safeco representative to obtain the name of the adjuster assigned to the claim and informed Safeco that Fader's jaw was fractured and that she had back surgery. *Id.* ¶ 47.

On October 18, 2012, Coen received a letter of representation from Brett Rosen ("Attorney Rosen"), Fader's attorney. D.E. 47 ¶ 9. The letter advised of his representation and requested statutory insurance disclosures. *Id.* Coen called Attorney Rosen's office the next day and left a message for Attorney Rosen's paralegal to call him with information concerning Fader's injuries. *Id.* ¶ 10. Coen first spoke with Attorney Rosen on October 23, 2012. D.E. 61 ¶ 55. In that conversation, Attorney Rosen told Coen that Fader's injuries were "anything but minor, soft tissue injuries" and that Nicole was solely responsible for the collision. *Id.*

3

After October 23, 2012, Coen also communicated with Rosen, the Herreras and the Herrera family attorney concerning Fader's claim. D.E. 47 ¶ 16. However, Coen did not increase the reserve for Fader's claim to the policy limits until speaking with Progressive's adjuster in early December 2012. *Id.* ¶ 33. Progressive's adjuster told Coen that Fader had been hospitalized for over two weeks and that her medical bills exceeded $100,000. *Id.*

On December 13, 2012, Coen sent Attorney Rosen a tender letter, settlement check, and proposed release as to Fader's claim. *Id.* ¶ 37. The same day, Coen also sent a letter to Jorge Herrera advising him that Safeco had tendered the policy limits to Hayes and Fader through their respective attorneys, but that the Nicole's exposure likely exceeded the policy limits and that they should consult with their own lawyer. *Id.*; *see also* D.E. 47-41 at 3. Unknown to Coen, the settlement check intended for the settlement of Fader's claim had a scrivener's error: rather than being made jointly payable to Attorney Rosen and Fader, the check was made payable to Attorney Rosen and Hayes. D.E. 47 ¶ 38.

By letter dated December 26, 2012, Attorney Rosen advised Coen that Fader was rejecting the tender. *Id.* ¶ 39. In the letter, Attorney Rosen stated he considered the tender "inadequate" because of the incorrect payees, that Safeco had not tendered the policy limits "within a reasonable time frame," and that Safeco had acted in bad faith. *Id.*

Despite Attorney Rosen's rejection of the tender, he subsequently communicated with Coen regarding a resolution of Fader's claim. *Id.* ¶ 42. In April and May of 2013, Attorney Rosen's office sent affidavits to Safeco asking that they be completed by the insureds. *Id.* Coen, in turn, sent the affidavits to the Herreras with an email explaining that Attorney Rosen was requesting the affidavits prior to considering acceptance of Safeco's tender of its policy limits. *Id.* The record does not disclose when, if ever, the affidavits were completed and returned.

4

On October 26, 2017, a jury rendered a verdict for Fader and against Nicole Herrera and Jorge Herrera, which on January 11, 2018 was reduced to final judgment in the amount of $4,671,499.02.  D.E. 61 ¶ 62; D.E. 61-9.  The instant action brings one count of insurance bad faith against Safeco for its failure to settle the Fader claim within policy limits.  D.E. 1 ¶ 30.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160.  The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever.

*Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir. 1967).  The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party.  *Liberty Lobby, Inc.*, 477 U.S. at 255.

## ANALYSIS

"Bad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims" and "merely holds insurers accountable for failing to fulfill their obligations." *Berges v. Infinity Ins. Co*., 896 So. 2d 665, 682–83 (Fla. 2004).

In *Harvey v. Geico General Insurance Company*, 259 So. 3d 1 (Fla. 2018), the Florida Supreme Court quashed and remanded a decision of Florida's Fourth District Court of Appeal reversing a $9.2 million jury verdict in favor of James Harvey on a bad faith claim.  *Id.* at 12.

The bad faith case in *Harvey* followed a wrongful death suit brought by the Estate of John Potts that was filed after Potts died from injuries sustained in an automobile accident with Harvey. *Id.* at 4. The accident occurred on August 8, 2006.  The insurer tendered its policy limits to the Potts Estate nine days later—on August 17, 2006.  *Id.*  In response, the Potts Estate requested a statement from Harvey and other financial information concerning Harvey's assets.  *Id.*  The adjuster failed to immediately advise Harvey of the request for his statement and then, after Harvey agreed to cooperate, failed to advise the Potts Estate's attorney that Harvey would provide the information requested.  *Id.*  Approximately six weeks after the accident, the Potts Estate sued Harvey and ultimately obtained a judgment in the amount of $9.2 million.  *Id.* at 5–6.

The Florida Supreme Court concluded the evidence was sufficient to support the jury's verdict because the record contained evidence that the adjuster failed to respond to requests for financial information from the attorney for the Potts Estate and the Potts Estate attorney testified

6

that he would have recommended delaying the filing of the wrongful death suit had he known the insured was going to provide requested financial information. *Id.* at 9. According to the Florida Supreme Court, the insurer's conduct should be evaluated based on the totality of the circumstances, but:

> In a case where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. In such a case, where the financial exposure to the insured is a ticking financial time bomb and suit can be filed at any time, any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith.

*Harvey*, 259 So. 3d at 7 (quotations marks, citations, and alterations omitted). In other words, not only is an insurer required to refrain from acting in its own interests in handling a claim, it must also act proactively with care and diligence in the interests of the insured.

Based on *Harvey*, the record here contains material issues of disputed fact with respect to whether Safeco acted with the care and diligence required by Florida's bad faith law. Among other issues, the record is disputed with respect to Coen's care and diligence in investigating Fader's claim, in responding to Attorney Rosen's requests, and in advising its insureds of their exposure and of Attorney Rosen's requests.

## CONCLUSION

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment, D.E. 48, is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this 10th__ day of November, 2020.

7

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record via CM/ECF